IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTIAN AKHATSEGBE, : | |
|     Petitioner : | |
| : | No. 1:24-cv-01871 |
| v. : | |
| : | (Judge Kane) |
| WARDEN J. GREENE, : | |
|     Respondent : | |

**MEMORANDUM**

Presently before the Court is pro se Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241 in which he asserts that the Bureau of Prisons ("BOP") has failed to credit him First Step Act ("FSA") time credits ("FTCs") from the date he was sentenced until approximately a month after the date he arrived at his designated facility to serve his sentence. For the reasons set forth below, the Court will deny the petition.

I.    BACKGROUND

On April 12, 2022, Pro se Petitioner Christian Akhatsegbe ("Akhatsegbe") pleaded guilty to conspiracy to commit wire fraud (18 U.S.C. § 1349), conspiracy to commit computer fraud and abuse – unauthorized access (18 U.S.C. § 371), access device fraud – possession of fifteen (15) or more access devices (18 U.S.C. § 1029(a)(3)), and aggravated identity theft (18 U.S.C. § 1028A), in the United States District Court for the Northern District of Georgia. See United States v. Akhatsegbe, No. 1:21-cr-00416 (N.D. Ga. Apr. 12, 2022), ECF No. 38. On March 15, 2023, Akhatsegbe was sentenced to an aggregate sentence of eighty-seven (87) months' incarceration. See id., ECF No. 51. According to the BOP's Inmate Locator (https://www.bop.gov/inmateloc/), Akhatsegbe is currently incarcerated at Federal Correctional Institution Allenwood Low ("FCI Allenwood") and has a projected release date of June 6, 2027.

Akhatsegbe filed the instant Section 2241 habeas petition on October 21, 2024.[1] (Doc. No. 1.) In the petition, Akhatsegbe asserts that the BOP has failed to properly apply four (4) months and twenty (20) days of FTCs from the time he was sentenced on March 15, 2023, until August 13, 2023. (Id. at 6–7.)

On November 21, 2024, the Court issued an Order directing Respondent to file a response to the petition. (Doc. No. 5.) Respondent timely filed a response in opposition to the petition on December 11, 2024. (Doc. No. 7.) Although Akhatsegbe had until December 26, 2024, to file a reply to the response, see (Doc. No. 5 at 1 (providing Akhatsegbe with fourteen (14) days after the filing of Respondent's response to file a reply)); Fed. R. Civ. P. 6(a)(1)(C) (providing that if the last day of a period "is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday"), he did not file a traverse until January 7, 2025.[2] (Doc. No. 8.) Akhatsegbe's habeas petition is ripe for review.

## II. LEGAL STANDARD

### A. Section 2241 Generally

Section 2241 confers federal jurisdiction over a habeas petition that has been filed by a federal inmate challenging "not the validity but the execution of [their] sentence." See Cardona

---

[1] The federal "prisoner mailbox rule" provides that a pro se prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk." See Houston v. Lack, 487 U.S. 266, 276 (1988). Here, Akhatsegbe included a declaration indicating that he placed his habeas petition in the prison mailing system on October 21, 2024. (Doc. No. 1 at 8.) As such, the Court uses October 21, 2024, as the petition's filing date.

[2] Although Akhatsegbe does not indicate when he provided his traverse to prison authorities for mailing to the Clerk of Court, it is dated on January 7, 2025. The Court will presume that the filing date is January 7, 2025, for purposes of this Memorandum.

v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (citations and footnote omitted); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005) (stating that Section 2241 "allows a federal prisoner to challenge the 'execution' of his sentence in habeas"). While "the precise meaning of 'execution of the sentence' is hazy[,]" the phrase has been interpreted as to "put into effect" or "carry out." See Woodall, 432 F.3d at 242, 243 (citation omitted). As a result, a federal inmate may challenge conduct undertaken by the BOP that affects the duration of the inmate's custody. See, e.g., Barden v. Keohane, 921 F.2d 476, 478–79 (3d Cir. 1990) (finding that a federal inmate's Section 2241 petition is actionable where the inmate attacks the term of their custody by challenging the manner in which the BOP is computing their federal sentence); United States v. Vidal, 647 F. App'x 59, 60 (3d Cir. 2016) (unpublished) ("Because [the federal inmate's] claim challenges the BOP's calculation of sentence credits, it is appropriately addressed in a petition for a writ of habeas corpus pursuant to [Section] 2241" (citation omitted)). Thus, Akhatsegbe's claim that the BOP has incorrectly calculated his federal sentence by denying him earned FSA FTCs is properly brought pursuant to the provisions of Section 2241.[3]

### B. The FSA

Under the FSA, the Attorney General was charged with development and release of a Risk and Needs Assessment System (the "System") within two-hundred-and-ten (210) days of December 21, 2018, the date on which the FSA was enacted. See 18 U.S.C. § 3632(a). The System is to be used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically

---

[3] Respondent acknowledges that Akhatsegbe properly exhausted his administrative remedies prior to filing his Section 2241 petition. See (Doc. No. 7 at 2–3).

assessing an inmate's recidivism risk; (5) reassigning an inmate to appropriate EBRRs and productive activities ("PAs"); (6) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (7) determining when the inmate is ready to transfer to pre-release custody or supervised release.  Id.  Moreover, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs."  See Kurti v. White, No. 1:19-cv-02109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020) (citing 18 U.S.C. § 3632(b)).

The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive FTCs to be applied toward time in pre-release custody or supervised release.  See 18 U.S.C. § 3632(d)(4)(A).  An inmate may initially earn ten (10) days of credit for every thirty (30) days of successful participation.  See id.  Moreover, eligible inmates who have been assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two (2) consecutive assessments may earn an additional five (5) days of credit for every thirty (30) days of successful participation.  See id.

Inmates convicted of certain enumerated offenses, or inmates subject to a final order of removal, are ineligible to earn FTCs.  See id. § 3632(d)(4)(D)–(E).  In addition, an inmate cannot earn FTCs for EBRRs successfully completed prior to the enactment of the FSA on December 21, 2018, or "during official detention prior to the date the prisoner's sentence commences under [18 U.S.C. §] 3585(a)."  See id. § 3632(d)(4)(B).  Section 3585(a) provides that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."  See id. § 3585(a).

The BOP has issued regulations providing that "[a]n eligible inmate begins earning FSA time credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)." See 28 C.F.R. § 523.42(a). An inmate must also be "successfully participating" in designated programming to earn FSA credits. See 28 C.F.R. § 523.41(c)(1). "'Successful participation' requires a determination by [BOP] staff that an eligible inmate has participated in the EBRR programs or PAs that the [BOP] has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA." See id. § 523.41(c)(2).

## III.    DISCUSSION

Respondent argues that the Court should deny Akhatsegbe's petition because the BOP properly calculated and applied his FTCs. See (Doc. No. 7 at 3–12). In the first instance, Respondent rejects Akhatsegbe's contention that he should have started earning FTCs on March 15, 2023, his date of sentencing. In this regard, Respondent asserts that "inmates do not begin earning FTCs until they have completed the required needs assessments that will dictate the EBRR programming or productive activities that will appropriately address their needs." See (id. at 7 (citing Sohl v. Warden, FCI Fort Dix, No. 22-cv-04295, 2023 WL 1794871, at *1 (D.N.J. Feb. 7, 2023))).[4] Respondent notes that "Congress did not specifically, unambiguously define

---

[4] The Court is concerned with Respondent's citation to Sohl here (as well as Respondent's citation to Sohl on page 8 of the response) for the proposition that inmates need to complete certain assessments before they earn FTCs. While the need to complete assessments before earning FTCs may ultimately be true, Sohl did not state such a proposition in the portion of the opinion cited to by Respondent. Instead, the only reference to the alleged need to complete an assessment before earning FTCs is where the district court summarized the facts of the case and respondent's answer to the Section 2241 habeas petition. See 2023 WL 1794871, at *1 ("The BOP disallowed Petitioner 1003 days for 'Missing Need Area(s),' in particular a needs assessment for 'Trauma.' . . . Respondent asserts the following facts in answer to the petition. . . .

5

when an inmate begins earning FTCs." See (id.)  As such, "the BOP promulgated regulations that provide guidance for determining applicable dates," and some of those "provisions dictate factors that can delay or preempt an inmate's FTC earning after [their] initial eligibility date." See (id. (citing 28 C.F.R. § 523.41(c)(4))).  Respondent indicates that these regulations provide that: (1) "an 'eligible inmate begins earning [FTCs] after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated [BOP] facility where the sentence will be served),'" see (id. (quoting 28 C.F.R. § 523.42(a))); (2) "an inmate may be preempted from earning FTCs if [they are] designated outside the institution," (id. (citing 28 C.F.R. § 523.41(c)(4)(ii))); and (3) "to 'successfully complete' EBRR programming or productive activities, an inmate must complete the prerequisite assessments which identify the needs to be addressed" (id. (citing 28 C.F.R. §§ 523.40(b), 523.41(c)(2))).

Due to these BOP regulations, Respondent contends that Akhatsegbe did not begin earning eligible participation days towards his FTCs on March 15, 2023, his date of sentencing, because he "was housed in various institutions as a 'holdover' inmate until he reached his designated facility – FCI Allenwood" on July 13, 2023.  See (id. at 9–10).  Respondent points out that once Akhatsegbe arrived at FCI Allenwood, he began to earn ten (10) FTCs for every thirty (30)-day period of participation days.  See (id. at 10).  Then, starting on February 6, 2024, Akhatsegbe began to earn fifteen (15) FTCs for every 30-day period of participation days, see

---

Petitioner has not completed a Trauma Needs Assessment, so he is in 'Trauma refuse' or 'opt out' status, and he may not have his FSA Time Credits applied.  (Id. at 11.)  As soon as he completes the Needs Assessment, his credits will be applied.  (Id.)").  A district court's factual recitation or reference to a respondent's factual assertion in an answer to a habeas petition is not a legal statement that another district court could rely on as persuasive authority.  Respondent should use caution when citing to such cases in the future so not to potentially mislead the Court.

6

(id. at 11–12), which continues to date to the extent he is not refusing to participate in an assignment. See (id. at 12).

      Akhatsegbe's petition presents an issue of first impression in this District, namely, whether the BOP's regulations pertaining to when federal inmates can begin earning FTCs are controlling. Numerous federal district courts have concluded that the BOP's regulations are not controlling because they conflict with the FSA as to when an inmate can start earning FTCs. See, e.g., Heath v. Knight, No. 22-cv-07270, 2024 WL 5198863, at *3–4 (D.N.J. Dec. 23, 2024) (noting that pursuant to the United States Supreme Court's decision in Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024), courts are no longer required to defer to agency determinations of ambiguous statutory text; explaining that Congress unambiguously defined when an inmate's sentence commences by enacting Section 3585(a) and thus, when an inmate can start earning FTCs; and concluding that the "BOP's interpretation in 28 C.F.R. § 523.42(a) [that] a prisoner may begin earning FSA time credits on the date the prisoner arrives at the designated BOP facility where [they] will serve [their] sentence . . . conflicts with the plain meaning of the statute"); Puana v. Williams, No. 24-cv-01088, 2024 WL 4932514, at *4 (D. Colo. Dec. 2, 2024) ("Unless another exclusion applies, federal prisoners are eligible to begin earning FSA credits on the date their sentence commences under [Section] 3585(a)."); Dane v. Bayless, No. 5:24-cv-00157, 2024 WL 5150683, at *4 (N.D.W. Va. Nov. 20, 2024) (finding that the BOP's "policy conflicts with the statute insofar as it defines 'commencement of sentence' more narrowly than the statute" and referencing "[a] number of courts [that] have found that the BOP's policy conflicts with the statute"), report and recommendation adopted, 2024 WL 5150650 (N.D.W. Va. Dec. 17, 2024). At least one (1) district court has reached a contrary conclusion. See Stinson v. Martinez, No. 2:23-cv-00751, 2024 WL 4969169, at *7 (W.D. La. Nov. 12, 2024) (concluding

that "the FSA does not provide that prisoners must begin receiving credit upon the commencement of a sentence"), report and recommendation adopted as modified by 2024 WL 4965618 (W.D. La. Dec. 3, 2024).

Although this is an issue of first impression in this District, this Court need not decide whether the BOP's regulations conflict with the FSA because even if they do, Akhatsegbe has not established that he is entitled to an award of FTCs starting on March 15, 2023. To be entitled to FTCs, Akhatsegbe had to successfully participate in EBRR programming or PAs following his sentencing on March 15, 2023, until the date he was received at FCI Allenwood on July 13, 2023. See 18 U.S.C. § 3632(d)(4)(A). Akhatsegbe has not demonstrated in his petition or any of the attachments thereto that he successfully participated in any EBRR programming or PAs during the period of March 15, 2023, through July 13, 2023, to justify an award of additional FTCs.[5] Instead, it appears that he is seeking FTCs "simply because he was sentenced and in federal custody as of that date." See Stevens v. Jacquez, No. 3:23-cv-01482, 2024 WL 3200546, at *4 (D. Or. June 25, 2024). This is supported by the entirety of Akhatsegbe's arguments in his traverse insofar as he focuses on when he should have started earning FTCs instead of pointing to any evidence that he successfully participated in any EBRR programming or PAs from March 15, 2023, through July 13, 2023.[6] See (Doc. No. 8 at 1–7).

---

[5] It does not appear that Akhatsegbe could have participated in programming because the BOP did not conduct its assessment to determine the type and amount of appropriate programming for him until he reached FCI Allenwood. See Dane, 2024 WL 5150683, at *5 ("[T]he BOP had not yet conducted an assessment to determine the type and amount of programming appropriate for petitioner until he arrived at his designated facility, and as such petitioner could not, in fact, successfully participate in programming."). Whether the BOP should have conducted its assessment sooner is not an issue for the Court's consideration.

[6] The Court has considered Akhatsegbe's traverse even though it was not timely filed.

As Respondent points out, "[u]nlike Good Conduct Time . . ., which is awarded based on the sentence imposed if the inmate simply refrains from engaging in negative behavior, FTCs are incentive based . . . [and] requires inmates to affirmatively engage in specific beneficial behavior."  See (Doc. No. 7 at 8).  Respondent has also shown that Akhatsegbe earned FTCs starting on July 13, 2023, contrary to his contention that he did not start earning FTCs until August 13, 2023.  Accordingly, Akhatsegbe has not shown that the BOP failed to properly calculate and apply his FSA FTCs and, consequently, he is not entitled to habeas relief in this case.

### IV.     CONCLUSION

For the reasons set forth above, the Court will deny Akhatsegbe's Section 2241 petition.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania